Lawrence W. Williamson, Jr.
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:  (913) 535-0736
E: l.williamson@williamsonfirm.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PERRY APSLEY,                    )    Case No.:05-1368-MLB-KMH
BOB BAILEY,                    )
JACOB A. BAKK,                )    THIRD AMENDED COMPLAINT-CLASS
GARY BALL,                    )    ACTION
CHARLES L. BEAN JR.,         )
PEGGY S. BELL,                )
THOMAS BELTON,            )
VERNON L. BENTLEY,       )
MELONDA BIRCHER,        )
JAMES BOWMAKER,        )
JERRY L. BRANSTETER,      )
MICHAEL E. BURGARDT,    )
ROCKY R. BURRIS,          )
DANIEL D. BURROWS,      )
HENRY F. BUTLER,          )
FRANK CASH,                )
BETTY CHILDERS,          )
DAVID L. CLAY,              )
REDELL COLEMAN,         )
LARRY E. COMBS,          )
HARVEY J. CONYAC,       )
LOREN W. COX,             )
PHYLLIS A. COX,          )
LINDA L. DEZARN,         )
WILLIAM D. DOSHIER,      )
THROMA A. DYAS,        )
CHARLES D. ELDER,       )
ALAN S. EPPERSON,       )
LLOYD C. FANSLER,       )
JERALD J. GILBERT,       )
CHIP GILCHRIST II,       )
RICHARD GOTTHARD,    )
BRIAN GROOM,            )
JAMES HAMMON,         )

-1-

THIRD AMENDED CLASS ACTION COMPLAINT

1    JANET S. HANSEN,                          )
     DENISE A. HARRIS,                         )
2    ALLEN C. HATCHER,                         )
     RON W. HENDERSHOT,                        )
3    OLIVIA J. HOUSLEY,                        )
     VERNA J. HOUSTON,                         )
4    LARRY W. JAMES,                           )
     SHARRON N. JAMES,                         )
5    DALE C. JAYNE JR.,                        )
     GARY L. JOHNSON,                          )
6    MELVYN J. JOHNSON,                        )
     DONALD R. JONES,                          )
7    RALPH O. KEENER,                          )
     DANNY R. KENNEDY,                         )
8    MELVIN E. KERNS,                          )
     GORDON B. KINKEAD,                        )
9    JIMMY LE,                                 )
     CARLTON D. LEE,                           )
10   STEPHEN L. LINCK,                         )
     FREDDY J. MCCOLPIN,                       )
11   MARK MCCURDY,                             )
     JERRY L. MCKINNEY,                        )
12   GLENNYS M. MONTGOMERY,                    )
     CATHY J. MUNSELL,                         )
13   JAN W. MURRAY,                            )
     STEVEN NGO,                               )
14   HUYEN T. NGUYEN,                          )
     LUYEN D. NGUYEN,                          )
15   BARBARA A. ODOM,                          )
     KENT W. OWEN,                             )
16   LOWANDA J. PATTON,                        )
     PAUL D. PETE,                             )
17   BA PHAM,                                  )
     BRENT L. POPP,                            )
18   JAMES E. PORTER,                          )
     JAY E. POWELL,                            )
19   WARREN PYLES,                             )
     WILLARD J. RATCHFORD,                     )
20   VERONICA RIOS,                            )
     RICHARD D. ROEDER,                        )
21   DARLENE E. ROZAR,                         )
     ALBERT SCHLOETZER,                        )
22   JOSEPH E. SCHROEDER,                      )
     STEVEN M. SCHWIND,                        )
23   WILLIAM H. SETCHELL,                      )
     JAMES C. SHEPPARD,                        )
24                                             )
                                               )
25                                             )
                                               )
26                                             )

THIRD AMENDED CLASS ACTION COMPLAINT

TEDDY F. SILL,                          )
DEBRA L. SMITH,                         )
SAMMY J. SMITH,                         )
SHARON A. SOUTHERN,                     )
LINDA C. SPARRER,                       )
CHARLES STARK,                          )
DONALD E. TITUS,                        )
ABEL L. VASQUEZ,                        )
HENRY F. VICTOR,                        )
JAMES WALKER,                           )
JAMES R. WALLACE,                       )
JIMMY WALLACE,                          )
RICHARD A. WALLIN,                      )
ROY T. WELLS,                           )
MICHAEL B. WELSH,                       )
CAROLYN Y. WHEATON,                     )
SYLVESTER WILLIAMS II,                  )
JANET M. WILSON,                        )
WALTER WOODS,                           )
BETTY R. YOUNG, individually and on     )
behalf of those similarly situated,     )
                                        )
                                        )
            Plaintiffs,                 )
                                        )
        vs.                             )
                                        )
THE BOEING COMPANY and SPIRIT           )
AEROSYSTEMS,

            Defendants.
_____

### THIRD AMENDED CLASS ACTION COMPLAINT

COMES NOW plaintiffs individually and on behalf of those similarly situated, by and through their counsel, Lawrence W. Williamson, Jr. of the Williamson Law Firm, LLC and Uzo L. Ohaebosim of The Law Offices of Uzo L. Ohaebosim and for their causes of action against defendants, allege and state as follows:

THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.      GENERAL ALLEGATIONS ...................................................................... 6

II.     JURISDICTION AND VENUE ................................................................. 9

III.    PARTIES ................................................................................................... 10

   A.  General Allegations as to all Plaintiffs .............................................. 10

   B.  Specific Allegations as to Individual Plaintiffs ................................. 10

   C.  Defendants ........................................................................................... 31

IV. CLASS ALLEGATIONS ............................................................................ 32

   A.  23 (a) Requirements ............................................................................ 33

   B.  23(b) Requirements ............................................................................. 34

V. FACTUAL ALLEGATIONS ....................................................................... 35

   A.  Pattern and Practice of Discrimination ............................................. 35

   1.  Boeing created and peddled the Plan to get rid of older workers ...... 35

   2.  Spirit participated in and perfected the Plan ...................................... 38

   3.   IAMNPF and Mercer participated in the Plan as well ...................... 40

   B.  Disparate Treatment ............................................................................ 41

   1.  Similarly Situated Younger Individuals Treated More Favorably ..... 41

   2.  Further Direct Evidence of Intentional Discrimination ..................... 42

   C.   Disparate Impact ............................................................................... 44

   1. Alleged Criteria ..................................................................................... 45

   2. Alleged Criteria Was Not Utilized ....................................................... 45

   3. Even If Criteria Was Used, It Allowed for Too much Subjectivity ...... 45

THIRD AMENDED CLASS ACTION COMPLAINT

D.   Statistics Provide Evidence for Pattern and Practice, Disparate Treatment, and Disparate Impact ........................................................................................................... 46

E.   IAM Breached its Duty of Fair Representation ............................................. 47

F.   Defendants Purposely Interfered With the ERISA Rights of the Employees.................. 47

COUNT I: AGE DISCRIMINATION ........................................................................ 48

COUNT II: INTERFERENCE WITH ERISA RIGHTS .............................................. 48

COUNT III: BREACH OF CONTRACT .................................................................... 49

VI.   PRAYER FOR RELIEF ...................................................................................... 50

THIRD AMENDED CLASS ACTION COMPLAINT

# I.    GENERAL ALLEGATIONS

1.        This case is about the betrayal by The Boeing Company and its partner in crime, Spirit AeroSystems (unless specified the terms Spirit, Midwestern, and/or Onex are used to refer to Spirit AeroSystems) against more that 1,000 employees who have dedicated decades in assisting Boeing collecting more that Ten Billion dollars in revenue.  "We simply want to work"-would be the resounding cry from the plaintiffs and Class.  As such, the plaintiffs seek injunctive relief and equitable relief in this matter.

2.        Boeing and Spirit kept decisions a secret.  The defendants kept the names of the subsidiaries secret until after the decisions were made against the plaintiffs and Class.  In furtherance of these secrets, Boeing provided a code name "Project Lloyd."  Only certain personnel were provided access to the folders under this database.  This database was at least 7.59 MB in size.  The defendants have also kept the true relationship between Boeing, Onex, Midwestern, and Spirit AeroSystem a secret.

3.        One act that was no secret was the termination of the plaintiffs and Class.  Instead of informing the employees when decisions were made, it tortured employees and put families and individuals through unexplainable feelings while they waited to see if they would receive a "pink slip."  In announcing these terminations, the employees of Boeing were entitled to more respect than the insult of throwing "insult slips" into the driveways of the individuals who helped Boeing prosper throughout the years.  The humiliation for workers did not end here.  Nigel Wright, of Onex, acting on behalf of Spirit, publicly stated that the workers who were not offered positions were individuals with bad attitudes, troublemakers, and/or deadbeats.  Some employees were even escorted off of the premises as if they were common criminals.

THIRD AMENDED CLASS ACTION COMPLAINT

4.      How much less dignity can someone have, than for a delivery truck to throw an envelope out onto the driveway?  Each plaintiff and Class member deserved much more than that and at the very least deserved to know "why" they were terminated.  In failing to adequately protect the rights of the older workers, the defendants have injured not only these employees, but their families and loved ones as well.  As Plaintiff Pete has noted, "Life isn't always fair but, why is Boeing playing with the people and their family's lives!?"

5.      Instead of accepting responsibility for the treatment the defendants have perpetrated, defendants have begun playing "pin the tail on the other."  At the EEOC stage, Defendant Boeing stated that it did not have anything to do with the decisions made against the employees.  However, there were notes sent from Onex that stated that Boeing's mangers were to help pick and choose who was staying for the new company (Spirit).  Additionally, plaintiffs have indisputable proof that Boeing's managers indeed had significant input into the wrongful terminations of the plaintiffs and Class.

6.      While Boeing has instituted its "play dumb" defense, Onex has instituted its "see no evil" defense.  Despite federal mandates to maintain proper records regarding why the decisions were made against plaintiffs and Class, Onex failed to do so.  As a result, Onex was penalized by the EEOC for these actions.

7.      Employees who had believed the myth of job security that Boeing professed over the years were, after 20 years, forced to enter the job market, tainted as worker's not good enough to make the grade.  Plaintiffs, such as Plaintiff James' dreams of retiring at a certain age were taken away from them.

8.      Additionally, the laid off workers were denied the right to vote when time came to protest the actions of Boeing and Onex.  The IAM did not represent the interests of these workers.  One example of the Union's failures can be seen with the failure to file a grievance.  IAM Union drafted a grievance and called for all to sign.  However, mysteriously, the grievance disappeared.

THIRD AMENDED CLASS ACTION COMPLAINT

9.        As another sign of defendants' bad faith, Nigel Wright stated that as a gesture of good will to the machinists union, when the company needs to hire again that they would first hire back the laid off workers.  However, Onex (Spirit) has not honored that promise.  Indeed, many of the plaintiffs and Class members have applied for numerous positions that they are qualified for and have held for years, and have not been offered a position.  In some cases plaintiffs have been rejected as "unqualified."  Additionally, Spirit Aerospace has set arbitrary standards regarding being hired into the company so that former workers could almost never receive a job offer.

10.       In connection with the RIF, the defendants engaged in a pattern or practice of age discrimination, in treating younger employees more favorably than older employees, including (but not limited to) some of the following specific actions:

      a.    Consciously deciding not to comply with the Older Workers Benefit Protection Act ("OWBPA") for certain job grades, in order to avoid having to disclose demographic data and its "selection criteria" to those affected by the RIF;

      b.    Terminating more qualified older workers while employing less qualified younger workers;

      c.    Failing to provide the terminated workers with the rationale why they were terminated;

      d.    Filling "open" positions within departments with younger employees (i.e., under the age of 40) just before the RIF, then terminating older workers (i.e., those 40 years of age and older) in the same or similar positions as part of the RIF;

      e.    Allowing managers to access improper criteria, such as age, date of birth, and other age related data, for use in making RIF decisions;

THIRD AMENDED CLASS ACTION COMPLAINT

f.    Setting up a "sham" process for displaced workers to "re-apply" for open positions with Spirit, resulting in situations where older applicants (i.e., those 40 years of age and older) were not given the same consideration as younger employees and were denied even the opportunity to interview for such open positions;

g.    Agreeing with non-named parties that Spirit would reduce the age of the workforce by 2010; and

h.    Continuing to hire new and younger employees after the RIF.

11.    The alleged system was subjective, arbitrary, non-substantive, dishonest, and inaccurate.  Additionally, the system was:

a.    Biased against older (over age 40) workers; and

b.    Inequitable and inappropriate because of pool size and composition.

12.    In addition to the foregoing facts, Plaintiffs are "similarly situated" in that: all are over 40; all were terminated by Boeing and/or not hired by Spirit as part of a Reduction in Force; all worked for the Wichita Division; neither were informed as to why they were terminated; each were qualified for their positions; all suffered in the same age biased environment; all subjected to defendants' conspiracy to reduce the age of the workforce; all subjected to defendants' attempt to circumvent the seniority requirements of the bargaining agreements; and all seek the same remedies .

## II.    JURISDICTION AND VENUE

13.    This is a civil action over which original jurisdiction is vested in this Court by 28 U.S.C. § 1331 and 1343(a) and 29 U.S.C. § 626(f)(3).  This Court also is vested with exclusive subject matter jurisdiction over plaintiffs' claims under ERISA pursuant to 29 U.S.C. § 1132(e)(1) and (f)12.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims within its original or exclusive jurisdiction that they form part of the same case or controversy under Article III of the United States

-9-

THIRD AMENDED CLASS ACTION COMPLAINT

Constitution.   Venue is appropriate in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e) (2) as it is brought in a judicial district in which the defendants reside or may be found at the time the action is commenced. Further, many of the plaintiffs and class members reside in the State of Kansas.

14.     Plaintiffs have exhausted and satisfied all conditions precedent to filing this action.   Additionally, plaintiffs invoke the single file rule as defendants were placed on sufficient notice of the class wide nature of the action.  Multiple plaintiffs filed a class-wide charge of age discrimination with the US. Equal Employment Commission ("EEOC"), which was cross filed with the Kansas Human Rights Commission ("KHRC").   Each plaintiff has consented to join this action.  The Consent to Sue forms for the named plaintiffs will be filed separately due to the size of the files but are incorporated herein by reference.

### III.     PARTIES

#### A.  General Allegations as to all Plaintiffs

15.     At all pertinent times, each of the plaintiffs and Class member in this action was an employee of the defendants within the meaning of the ADEA, 29 U.S.C. § 630, and ERISA, 29 U.S.C. § 1002(6), and a participant in and/or beneficiary of the Plans within the meaning of ERISA, 29 U.S.C. 1002(7) and (8).

16.     The plaintiffs, and each of them, were affected by the defendants' general pattern and practice of discriminating against older workers.

#### B.  Specific Allegations as to Individual Plaintiffs

17.     Plaintiff Perry Apsley ("Plaintiff Apsley") is a resident of the State of Kansas who was born on May 5, 1955, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.   Plaintiff Apsley was employed by Boeing for twenty (20) years. Plaintiff Apsley was qualified to hold his position as a Strechpress operator.  Thus, Plaintiff Apsley filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

THIRD AMENDED CLASS ACTION COMPLAINT

18.     Plaintiff Bob Bailey ("Plaintiff Bailey") is a resident of the State of Kansas who was born on January 1, 1953, and who, as of June 10, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bailey was employed by Boeing for eighteen (18) years. Plaintiff Bailey was qualified to hold his position as an equipment maintenance electrician. Thus, Plaintiff Bailey filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

19.     Plaintiff Jacob A. Bakk ("Plaintiff Bakk") is a resident of the State of Kansas who was born on March 6, 1954, and who, as of May 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bakk was employed by Boeing for twenty-five (25) years. Plaintiff Bakk was qualified to hold his position as a chief metal machine operator.  Thus, Plaintiff Bakk filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

20.     Plaintiff Gary Ball ("Plaintiff Ball") is a resident of the State of Kansas who was born on September 26, 1946, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Ball was employed by Boeing for eighteen (18) years. Plaintiff Ball was qualified to hold his position as a plumber/boiler employee.  Thus, Plaintiff Ball filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

21.     Plaintiff Charles L. Bean Jr. ("Plaintiff Bean") is a resident of the State of Kansas who was born on January 24, 1952, and who, as of May 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bean was employed by Boeing for seventeen (17) years. Plaintiff Bean was qualified to hold his position as on the move crew.

22.     Plaintiff Peggy S. Bell ("Plaintiff Bell") is a resident of the State of Kansas who was born on April 2, 1951, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bell was employed by Boeing for more than twenty (20) years.  Plaintiff Bell was qualified to hold her position as a material processor.  Thus, Plaintiff

THIRD AMENDED CLASS ACTION COMPLAINT

Bell filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

23.     Plaintiff Thomas Belton ("Plaintiff Belton") is a resident of the State of Kansas who was born on March 23, 1950, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Belton was employed by Boeing for more than eighteen (18) years.  Plaintiff Belton was qualified to hold his position as a plumber/boiler employee.  Plaintiff Belton filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

24.     Plaintiff Vernon L. Bentley ("Plaintiff Bentley") is a resident of the State of Kansas who was born on November 12, 1952, and who, as of August 8, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Belton was employed by Boeing for more than nineteen (19) years.  Plaintiff Bentley was qualified to hold his position as an aluminum heat treater employee.

25.     Plaintiff MeLonda Bircher ("Plaintiff Bircher") is a resident of the State of Kansas who was born on December 20, 1960, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bircher was employed by Boeing for twenty-two (22) years.  Plaintiff Bircher was qualified to hold her position as an asset manager. Plaintiff Bircher filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

26.     Plaintiff James A. Bowmaker ("Plaintiff Bowmaker") is a resident of the State of Kansas who was born on December 24, 1954, and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Bowmaker was employed by Boeing for several years.  Plaintiff Bowmaker was qualified to hold his position at Boeing.  Thus, Plaintiff Bowmaker filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

THIRD AMENDED CLASS ACTION COMPLAINT

27.      Plaintiff Jerry L. Branstetter ("Plaintiff Branstetter") is a resident of the State of Kansas who was born on July 11, 1945, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Branstetter was employed by Boeing for more than twenty-seven (27) years.  Plaintiff Branstetter was qualified to hold the power district electrician position.  Thus, Plaintiff Branstetter filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

28.      Plaintiff Michael E. Burgardt ("Plaintiff Burgardt") is a resident of the State of Kansas who was born on January 26, 1952, and who, as of May 24, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Burgardt was employed by Boeing for thirty (31) years.  Plaintiff Burgardt was qualified to hold his position as a power feed drill technician. Thus, Plaintiff Burgardt filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

29.      Plaintiff Rocky R. Burris ("Plaintiff Burris") is a resident of the State of Kansas who was born on January 8, 1950, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Burris was employed by Boeing for twenty (20) years. Plaintiff Burris was qualified to hold his position as a plumber.  Thus, Plaintiff Burris filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

30.      Plaintiff Daniel D. Burrows ("Plaintiff Burrows") is a resident of the State of Kansas who was born on September 20, 1932, and who, as of August 22, 2003, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Burrows was employed by Boeing for thirty-three (33) years.  Plaintiff Burrows was qualified to hold his tooling position.  Thus, Plaintiff Burrows filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

31.      Plaintiff Henry F. Butler ("Plaintiff Butler") is a resident of the State of Kansas who was born on August 13, 1953, and who, as of May 20, 2005, was employed by Boeing at its

THIRD AMENDED CLASS ACTION COMPLAINT

Wichita, Kansas facility.  Plaintiff Butler was employed by Boeing for twenty-six (26) years.
Plaintiff Butler was qualified to hold his position as a material processor.  Thus, Plaintiff Butler
filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all
administrative remedies.

32.     Plaintiff Frank Cash ("Plaintiff Cash") is a resident of the State of Kansas who
was born on October 11, 1946, and who, as of May 20, 2005, was employed by Boeing at its
Wichita, Kansas facility.  Plaintiff Cash was employed by Boeing for more than eighteen (18)
years.  Plaintiff Cash was qualified to hold his position as a driveomatic.

33.     Plaintiff Betty Childers ("Plaintiff Childers") is a resident of the State of Kansas
who was born on July 19, 1953, and who, as of May 20, 2005, was employed by Boeing at its
Wichita, Kansas facility.  Plaintiff Childers was employed by Boeing for twenty-six (26) years.
Plaintiff Childers was qualified to hold her position as a material processor.  Thus, Plaintiff
Childers filed a timely EEOC complaint, received a notice of the right to sue and has exhausted
all administrative remedies.

34.     Plaintiff David L. Clay ("Plaintiff Clay") is a resident of the State of Kansas who
was born on May 18, 1946, and who, as of June 3, 2005, was employed by Boeing at its
Wichita, Kansas facility.  Plaintiff Clay was employed by Boeing for more than thirty-five (35)
years.  Plaintiff Clay was qualified to hold his position at Boeing.  Thus, Plaintiff Clay filed a
timely EEOC complaint, received a notice of the right to sue and has exhausted all
administrative remedies.

35.     Plaintiff Redell Coleman ("Plaintiff Coleman") is a resident of the State of
Kansas who was born on April 9, 1946, and who, as of June 2005, was employed by Boeing at
its Wichita, Kansas facility.  Plaintiff Coleman was employed by Boeing for more than thirty
one (31) years.  Plaintiff Coleman was qualified to hold his position as a bench mechanic.

36.     Plaintiff Larry E. Combs ("Plaintiff Combs") was a resident of the State of
Kansas during the stated allegations.  Plaintiff Combs was born on September 9, 1948, and as of

THIRD AMENDED CLASS ACTION COMPLAINT

June 3, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Combs was employed by Boeing for twenty (20) years. Plaintiff Combs was qualified to hold his position as a business process analyst. Thus, Plaintiff Combs filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

37.     Plaintiff Harvey J. Conyac ("Plaintiff Conyac") is a resident of the State of Kansas who was born on January 15, 1945, and who, as of May 27, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Conyac was employed by Boeing for twenty-seven (27) years. Plaintiff Conyac was qualified to hold his position. Thus, Plaintiff Conyac filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

38.     Plaintiff Loren W. Cox ("Plaintiff Cox") is a resident of the State of Kansas who was born on July 21, 1955, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Cox was employed by Boeing for more than twenty-four (24) years. Plaintiff Cox was qualified to hold her position as a bench mechanic.

39.     Plaintiff Phyllis A. Cox ("Plaintiff P. Cox") is a resident of the State of Kansas who was born on January 1, 1949, and who, as of June 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff P. Cox was employed by Boeing for eighteen (18) years. Plaintiff P. Cox was qualified to hold her position as a sheet metal machinist. Thus, Plaintiff P. Cox filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

40.     Plaintiff Linda L. DeZarn ("Plaintiff DeZarn") is a resident of the State of Kansas who was born on June 16, 1956, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff DeZarn was employed by Boeing for ten (10) years. Plaintiff DeZarn was qualified to hold her position as a certified solder. Thus Plaintiff DeZarn filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

THIRD AMENDED CLASS ACTION COMPLAINT

41.     Plaintiff William D. Doshier ("Plaintiff Doshier") is a resident of the State of Kansas who was born on December 6, 1953, and who, as of June 17, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Doshier was employed by Boeing for more than twenty-nine (29) years.  Plaintiff Doshier was qualified to hold his position as a equipment operator.

42.     Plaintiff Throma A. Dyas ("Plaintiff Dyas") is a resident of the State of Kansas who was born on December 2, 1951, and who, as of May 19, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Dyas was employed by Boeing for nineteen (19) years. Plaintiff Dyas was qualified to hold her position as an inspector.

43.     Plaintiff Charles D. Elder ("Plaintiff Elder") is a resident of the State of Kansas who was born on February 28, 1952, and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Elder was employed by Boeing for more than twenty-six (26) years.  Plaintiff Elder was qualified to hold his position as a materials processor employee.

44.     Plaintiff Alan S. Epperson ("Plaintiff Epperson") is a resident of the State of Kansas who was born on August 22, 1964, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Epperson was employed by Boeing for sixteen (16) years.  Plaintiff Epperson was qualified to hold his position as an inspector.  Thus, Plaintiff Epperson filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

45.     Plaintiff Lloyd C. Fansler ("Plaintiff Fansler") is a resident of the State of Kansas who was born on August 5, 1946, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Fansler was employed by Boeing for thirty-one (31) years. Plaintiff Fansler was qualified to hold his position as a skin and spar area person.

46.     Plaintiff Jerald J. Gilbert ("Plaintiff Gilbert") is a resident of the State of Kansas who was born on April 20, 1950, and who, as of May 19, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Gilbert was employed by Boeing for seventeen (17) years.

THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiff Gilbert was qualified to hold his position as sheet metal mechanic.  Thus, Plaintiff Gilbert filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

47.     Plaintiff Chip Gilchrist II ("Plaintiff Gilchrist") is a resident of the State of Kansas who was born on August 30, 1956, and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Gilchrist was employed by Boeing for more than twenty (20) years.  Plaintiff Gilchrist was qualified to hold his position as a sheet metal mechanic employee.

48.     Plaintiff Richard Gotthard ("Plaintiff Gotthard") is a resident of the State of Kansas who was born on December 23, 1956, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Gotthard was employed by Boeing for twenty-five (25) years.  Plaintiff Gotthard was qualified to hold his position as a machinist.  Thus, Plaintiff Gotthard filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

49.     Plaintiff Brian Groom ("Plaintiff Groom") is a resident of the State of Kansas who was born on October 2, 1958, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Groom was employed by Boeing for more than twenty-four (24) years.  Plaintiff Groom was qualified to hold his position as a plastics bench mechanic.  Thus, Plaintiff Groom filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

50.     Plaintiff Janet S. Hansen ("Plaintiff Hansen") is a resident of the State of Kansas who was born on July 4, 1960, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Hansen was employed by Boeing for more than twenty-one (21) years.  Plaintiff Hansen was qualified to hold her position as a transportation employee.

51.     Plaintiff Denise A. Harris ("Plaintiff Harris") is a resident of the State of Kansas who was born on August 10, 1954, and who, as of May 20, 2005, was employed by Boeing at its

THIRD AMENDED CLASS ACTION COMPLAINT

Wichita, Kansas facility. Plaintiff Harris was employed by Boeing for more than twenty-nine (29) years. Plaintiff Harris was qualified to hold her position as a factory clerk.

52.     Plaintiff Allen C. Hatcher ("Plaintiff Hatcher") is a resident of the State of Kansas who was born on April 13, 1949, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Hatcher was employed by Boeing for more than nineteen (19) years. Plaintiff Hatcher was qualified to hold his position as an inspector.

53.     Plaintiff Ron W. Hendershot ("Plaintiff Hendershot") is a resident of the State of Kansas who was born on March 10, 1957, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Hendershot was employed by Boeing for twenty-seven (27) years. Plaintiff Hendershot was qualified to hold his position as a carpenter millwright specialist.

54.     Plaintiff Olivia J. Housley ("Plaintiff Housley") is a resident of the State of Kansas who was born on December 1, 1948, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Housley was employed by Boeing for twenty-six (26) years. Plaintiff Housley was qualified to hold her position as a master scheduler. Thus, Plaintiff Housley filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

55.     Plaintiff Verna J. Houston ("Plaintiff Houston") is a resident of the State of Kansas who was born on March 26, 1949, and who, as of May 18, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Houston was employed by Boeing for ten years. Plaintiff Houston was qualified to hold her position as a sealer. Thus, Plaintiff Houston filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

56.     Plaintiff Larry W. James ("Plaintiff L. James") is a resident of the State of Kansas who was born on June 26, 1958, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff James was employed by Boeing for more than twenty-four

THIRD AMENDED CLASS ACTION COMPLAINT

(24) years.  Plaintiff James was qualified to hold his position as a material processor.  Thus, Plaintiff James filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

57.     Plaintiff Sharron N. James ("Plaintiff James") is a resident of the State of Kansas who was born on March 21, 1951, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff James was employed by Boeing for twenty-five (25) years. Plaintiff James was qualified to hold her position as a material processor. Thus, Plaintiff James filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

58.     Plaintiff Dale C. Jayne Jr. ("Plaintiff Jayne") is a resident of the State of Kansas who was born on May 28, 1950, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Jayne was employed by Boeing for more than nineteen (19) years.  Plaintiff Jayne was qualified to hold his position as a tool maker.

59.     Plaintiff Gary L. Johnson ("Plaintiff Johnson") is a resident of the State of Kansas who was born on August 6, 1952, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Johnson was employed by Boeing for more than twenty-five (25) years.  Plaintiff Johnson was qualified to hold his position.  Thus, Plaintiff Johnson filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

60.     Plaintiff Melvyn J. Johnson ("Plaintiff M. Johnson") is a resident of the State of Kansas who was born on April 28, 1953, and who, as of June 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff M. Johnson was employed by Boeing for more than twenty-seven (27) years.  Plaintiff M. Johnson was qualified to hold his position as a laminator.  Thus, Plaintiff M. Johnson filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

THIRD AMENDED CLASS ACTION COMPLAINT

61.      Plaintiff Donald R. Jones ("Plaintiff Jones") is a resident of the State of Kansas who was born on August 9, 1953, and who, as of May 19, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Jones was employed by Boeing for nineteen (19) years. Plaintiff Jones was qualified to hold his position as an environmental operator.  Thus, Plaintiff Jones filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

62.      Plaintiff Ralph O. Keener ("Plaintiff Keener") is a resident of the State of Kansas who was born on August 22, 1948, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Keener was employed by Boeing for eighteen (18) years. Plaintiff Keener was qualified to hold his position as an assembly installer.  Thus, Plaintiff Keener filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

63.      Plaintiff Danny R. Kennedy ("Plaintiff Kennedy") is a resident of the State of Kansas who was born on September 12, 1952, and who, as June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Kennedy was employed by Boeing for more than twenty-six (26) years.    Plaintiff Kennedy was qualified to hold his position as a carpenter/millwright specialist.

64.      Plaintiff Melvin E. Kerns ("Plaintiff Kerns") is a resident of the State of Kansas who was born on January 15, 1954, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Kerns was employed by Boeing for more than fifteen (15) years.  Plaintiff Kerns was qualified to hold his position as a plumber/power plant specialist. Thus, Plaintiff Kerns filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

65.      Plaintiff Gordon B. Kinkead ("Plaintiff Kinkead") is a resident of the State of Kansas who was born on October 7, 1953, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Kinkead was employed by Boeing for more than

THIRD AMENDED CLASS ACTION COMPLAINT

1   twenty-five (25) years.  Plaintiff Kinkead was qualified to hold his position as a corrective

2   action coordinator.  Thus, Plaintiff Kinkead filed a timely EEOC complaint, received a notice of

3   the right to sue and has exhausted all administrative remedies.

4       66.       Plaintiff Jimmy Le ("Plaintiff Le") is a resident of the State of Kansas who was

5   born on April 4, 1954, and who, as of May 20, 2005, was employed by Boeing at its Wichita,

6   Kansas facility.  Plaintiff Le was employed by Boeing for nineteen (19) years.  Plaintiff Le was

7   qualified to hold his position as a mill operator.  Plaintiff Le filed a timely EEOC complaint,

8   received a notice of the right to sue and has exhausted all administrative remedies.  Plaintiff Le

9   filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all

10  administrative remedies.

11      67.       Plaintiff Carlton D. Lee ("Plaintiff Lee") is a resident of the State of Kansas who

12  was born on January 15, 1951, and who, as of May 20, 2005, was employed by Boeing at its

13  Wichita, Kansas facility.  Plaintiff Lee was employed by Boeing for more than twenty (20)

14  years.  Plaintiff Lee was qualified to hold his position as a sheet metal assembler.  Thus,

15  Plaintiff Lee filed a timely EEOC complaint, received a notice of the right to sue and has

16  exhausted all administrative remedies.

17      68.       Plaintiff Stephen L. Linck ("Plaintiff Linck") is a resident of the State of Kansas

18  who was born on June 11, 1951, and who, as of June 3, 2005, was employed by Boeing at its

19  Wichita, Kansas facility.  Plaintiff Linck was employed by Boeing for more than thirty (30)

20  years.  Plaintiff Linck was qualified to hold his position as an engineer.

21      69.       Plaintiff Jerry L. McKinney ("Plaintiff McKinney") is a resident of the State of

22  Kansas who was born on March 4, 1953, and who, as of May 20 2005, was employed by Boeing

23  at its Wichita, Kansas facility.  Plaintiff McKinney was employed by Boeing for more than

24  nineteen (19) years.  Plaintiff McKinney was qualified to hold his position as an operator tape

25  machinist employee.

26

THIRD AMENDED CLASS ACTION COMPLAINT

70.      Plaintiff Freddy J. McColpin ("Plaintiff McColpin") is a resident of the State of Kansas who was born on December 9, 1947, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff McColpin was employed by Boeing for more than twenty-three (23) years.  Plaintiff McColpin was qualified to hold his position as a plumber/boiler house power plant employee.  Thus, Plaintiff McColpin filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

71.      Plaintiff Mark McCurdy ("Plaintiff McCurdy") is a resident of the State of Oklahoma who was born on February 17, 1960, and who, as of May 23, 2005, was employed by Boeing at its Tulsa, Oklahoma facility.  Plaintiff McCurdy was employed by Boeing for more than twenty-five (25) years.  Plaintiff McCurdy was qualified to hold his position as a processor. Thus, Plaintiff McCurdy filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

72.      Plaintiff Glennys M. Montgomery ("Plaintiff Montgomery") is a resident of the State of Kansas who was born on October 14, 1940, and who, as of March 22, 2002, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Montgomery was employed by Boeing for nine years.  Plaintiff Montgomery was qualified to be employed at Boeing. Plaintiff Montgomery is qualified to represent an ERISA class.

73.      Plaintiff Cathy J. Munsell ("Plaintiff Munsell") is a resident of the State of Kansas who was born on December 30, 1956, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Munsell was employed by Boeing for twenty (20) years.  Plaintiff Munsell was qualified to hold her position as an assembler installer.  Thus, Plaintiff Munsell filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

74.      Plaintiff Jan W. Murray ("Plaintiff Murray") is a resident of the State of Kansas who was born on February 28, 1948, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Murray was employed by Boeing for more than seventeen

THIRD AMENDED CLASS ACTION COMPLAINT

(17) years.  Plaintiff Murray was qualified to hold his position as plastic bench composite mechanic.  Thus, Plaintiff Murray filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

75.      Plaintiff Steven Ngo ("Plaintiff Ngo") is a resident of the State of Kansas who was born on November 2, 1956, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Ngo was employed by Boeing for more than eighteen (18) years.  Plaintiff Ngo was qualified to hold his position in the machine shop.  Thus, Plaintiff Ngo filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

76.      Plaintiff Huyen T. Nguyen ("Plaintiff Nguyen") is a resident of the State of Kansas who was born on November 10, 1952, and who, as of May 18, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Nguyen was employed by Boeing for more than eighteen (18) years.  Plaintiff Nguyen was qualified to hold the sealer position.  Thus, Plaintiff Nguyen filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

77.      Plaintiff Luyen D. Nguyen ("Plaintiff L. Nguyen") is a resident of the State of Kansas who was born on November 20, 1950, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff L. Nguyen was employed by Boeing for sixteen (16) years.  Plaintiff Nguyen was qualified to hold the tape machine operator position.  Thus, Plaintiff Nguyen filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

78.      Plaintiff Barbara A. Odom ("Plaintiff Odom") is a resident of the State of Oklahoma who was born on September 5, 1938, and who, as of June 3, 2005, was employed by Boeing at its Tulsa, Oklahoma facility.  Plaintiff Odom was employed by Boeing for twenty (20) years.  Plaintiff Odom was qualified to hold her position as a supply chain management analyst.

THIRD AMENDED CLASS ACTION COMPLAINT

79.     Plaintiff Kent W. Owen ("Plaintiff Owen") is a resident of the State of Kansas who was born on December 17, 1958, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Owen was employed by Boeing for more than twenty-one (21) years.  Plaintiff Owen was qualified to hold his position as a MR&D technical analyst. Thus, Plaintiff Owen filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

80.     Plaintiff Lowanda J. Patton ("Plaintiff Patton") is a resident of the State of Kansas who was born on November 26, 1948, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Patton was employed by Boeing for twenty-six (26) years. Plaintiff Patton was qualified to hold her position as a steel metal employee.  Thus, Plaintiff Patton filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

81.     Plaintiff Paul D. Pete ("Plaintiff Pete") is a resident of the State of Kansas who was born on December 13, 1954, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Pete was employed at Boeing for more than twenty-five (25) years.  Plaintiff Pete was qualified to hold his position as a sheet metal employee.

82.     Plaintiff Ba Pham ("Plaintiff Pham") is a resident of the State of Kansas who was born on October 27, 1946, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Pham was employed at Boeing for more than twenty-two (22) years.  Plaintiff Pham was qualified to hold the CNC Machinist position.

83.     Plaintiff Brent L. Popp ("Plaintiff Popp") is a resident of the State of Kansas who was born on August 6, 1959, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Popp was employed by Boeing for more than twenty-five (25) years.  Plaintiff Popp was qualified to hold his position.  Thus, Plaintiff Popp filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

THIRD AMENDED CLASS ACTION COMPLAINT

84.     Plaintiff James E. Porter ("Plaintiff Porter") is a resident of the State of Kansas who was born on January 2, 1947, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Porter was employed by Boeing for more than eighteen (18) years.  Plaintiff Porter was qualified to hold his position as a project planner.

85.     Plaintiff Jay E. Powell ("Plaintiff Powell") is a resident of the State of Kansas who was born on October 6, 1954, and who, as of June 16 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Powell was employed by Boeing for more than thirty-one (31) years.  Plaintiff Powell was qualified to hold the production machinist position.  Thus, Plaintiff Powell filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

86.     Plaintiff Warren Pyles ("Plaintiff Pyles") is a resident of the State of Kansas who was born on September 8, 1956, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Pyles was employed by Boeing for eighteen (18) years.  Plaintiff Pyles was qualified to hold his position as a millwright employee. Thus, Plaintiff Pyles filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

87.     Plaintiff Willard J. Ratchford ("Plaintiff Ratchford") is a resident of the State of Kansas who was born on October 16, 1957, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Ratchford was employed by Boeing for nineteen (19) years.  Plaintiff Ratchford was qualified to hold his position as a hand router operator. Thus, Plaintiff Ratchford filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

88.     Plaintiff Veronica Rios ("Plaintiff Rios") is a resident of the State of Kansas who was born on November 20, 1961, and who, as of May 21, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Rios was employed by Boeing for more than five years. Plaintiff Rios was qualified to hold her position as a bench mechanic.

THIRD AMENDED CLASS ACTION COMPLAINT

89.     Plaintiff Richard D. Roeder ("Plaintiff Roeder") is a resident of the State of Kansas who was born on May 8, 1953, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Roeder was employed by Boeing for more than twenty-five (25) years. Plaintiff Roeder was qualified to hold his position as a machinist. Thus, Plaintiff Roeder filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

90.     Plaintiff Darlene E. Rozar ("Plaintiff Rozar") is a resident of the State of Kansas who was born on October 19, 1947, and who, as of May 21, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Rozar was employed by Boeing for nineteen (19) years. Plaintiff Rozar was qualified to hold her position as a machinist. Thus, Plaintiff Rozar filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

91.     Plaintiff Albert Schloetzer ("Plaintiff Schloetzer") is a resident of the State of Kansas who was born on August 21, 1951, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Schloetzer was employed by Boeing for fifteen (15) years. Plaintiff Schloetzer was qualified to hold his position as a housekeeper.

92.     Plaintiff Joseph E. Schroeder ("Plaintiff Schroeder") is a resident of the State of Kansas who was born on July 23, 1949, and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Schroeder was employed by Boeing for more than nineteen (19) years. Plaintiff Schroeder was qualified to hold his position as a materials processor employee.

93.     Plaintiff Steven M. Schwind ("Plaintiff Schwind") is a resident of the State of Kansas who was born on July 26, 1951 and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Schwind was employed by Boeing for more than nineteen (19) years. Plaintiff Schwind was qualified to hold his position as a manufacturing planner employee.

THIRD AMENDED CLASS ACTION COMPLAINT

94.     Plaintiff William H. Setchell ("Plaintiff Setchell") is a resident of the State of Kansas who was born on March 30, 1954, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Setchell was employed by Boeing for twenty-seven (27) years.  Plaintiff Setchell was qualified to hold his position as a storekeeper/clerk.  Thus, Plaintiff Setchell filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

95.     Plaintiff James C. Sheppard ("Plaintiff Sheppard") is a resident of the State of Kansas who was born on January 24, 1953, and who, was employed by Boeing for eighteen (18) years.  Plaintiff Sheppard was qualified to hold his position.  Thus, Plaintiff Sheppard filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

96.     Plaintiff Teddy E. Sill ("Plaintiff Sill") is a resident of the State of Kansas who was born on July 13, 1952, and who, as of May 2005, was employed by Boeing at its Wichita, Kansas facility.   Plaintiff Sill was employed by Boeing for more than twenty (20) years.  Plaintiff Sill was qualified to hold his position as a polisher-lead employee.

97.     Plaintiff Debra L. Smith ("Plaintiff Smith") was a resident of the State of Kansas during all applicable dates.  Plaintiff Smith was born on January 27, 1962, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.   Plaintiff Smith was employed by Boeing for eighteen (18) years.  Plaintiff Smith was qualified to hold her position as a manufacturer helper.   Thus, Plaintiff Smith filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

98.     Plaintiff Sammy J. Smith ("Plaintiff S. Smith") is a resident of the State of Kansas who was born on January 31, 1959, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff S. Smith was employed by Boeing for more than nineteen (19) years.  Plaintiff S. Smith was qualified to hold his position as an machinist.  Thus,

THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiff S. Smith filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

99.     Plaintiff Sharon A. Southern ("Plaintiff Southern") is a resident of the State of Kansas who was born on September 23, 1951, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Southern was employed by Boeing for twenty (20) years.  Plaintiff Southern was qualified to hold her position as a sheet metal assembler. Thus, Plaintiff Southern filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

100.     Plaintiff Linda C. Sparrer ("Plaintiff Sparrer") is a resident of the State of Kansas who was born on February 26, 1948, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Sparrer was employed by Boeing for sixteen years. Plaintiff Sparrer was qualified to hold her position as IWTP operator.  Thus, Plaintiff Sparrer filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

101.     Plaintiff Charles Stark ("Plaintiff Stark") is a resident of the State of Kansas who was born on July 26, 1961, and who, as of May 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Stark was employed by Boeing for more than sixteen (16) years. Plaintiff Stark was qualified to hold his position as a materials processor employee.

102.     Plaintiff Donald E. Titus ("Plaintiff Titus") is a resident of the State of Kansas who was born on June 13, 1952, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Titus was employed by Boeing for twenty-five (25) years. Plaintiff Titus was qualified to hold his position as a schedule compliance specialist.

103.     Plaintiff Abel L. Vasquez ("Plaintiff Vasquez") is a resident of the State of Kansas who was born on May 17, 1942, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility.  Plaintiff Vasquez was employed by Boeing for more than twenty-eight (28) years.  Plaintiff Vasquez was qualified to hold the manufacturing engineer

THIRD AMENDED CLASS ACTION COMPLAINT

position. Thus, Plaintiff Vasquez filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

104.     Plaintiff Henry F. Victor ("Plaintiff Victor") is a resident of the State of Kansas who was born on March 6, 1937, and who, as of May 21, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Victor was employed by Boeing for more than twenty-five (25) years. Plaintiff Victor was qualified to hold his position as a material processor. Thus, Plaintiff Victor filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

105.     Plaintiff James Walker ("Plaintiff Walker") is a resident of the State of Kansas who was born on November 15, 1955, and who, as of June 16, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Walker was employed by Boeing for eighteen (18) years. Plaintiff Walker was qualified to hold his position as an assembler. Thus, Plaintiff Walker filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

106.     Plaintiff James R. Wallace ("Plaintiff Wallace") is a resident of the State of Kansas who was born on August 11, 1948, and who, as of June 3, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Wallace was employed by Boeing for more than twenty-six (26) years. Plaintiff Wallace was qualified to hold his position as a power distribution electrician. Thus, Plaintiff Wallace filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

107.     Plaintiff Jimmy Wallace ("Plaintiff J. Wallace") is a resident of the State of Kansas who was born on September 28, 1954, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff J. Wallace was employed by Boeing for nineteen (19) years. Plaintiff J. Wallace was qualified to hold his position as a toolmaker.

108.     Plaintiff Richard A. Wallin ("Plaintiff Wallin") is a resident of the State of Kansas who was born on September 18, 1950, and who, as of June 16, 2005, was employed by

THIRD AMENDED CLASS ACTION COMPLAINT

Boeing at its Wichita, Kansas facility. Plaintiff Wallin was employed by Boeing for more than twenty-nine (29) years. Plaintiff Wallin was qualified to hold his position as a tool and die/ deep draw employee.

109.     Plaintiff Roy T. Wells ("Plaintiff Wells") is a resident of the State of Kansas who was born on October 19, 1946, and who, as of May 2002, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Wells was employed by Boeing for more than twenty-one (21) years. Plaintiff Wells was qualified to hold his position as a materials processor employee.

110.     Plaintiff Michael B. Welsh ("Plaintiff Welsh") is a resident of the State of Kansas who was born on March 1, 1950, and who, as of June 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Welsh was employed by Boeing for more than twenty (20) years. Plaintiff Welsh was qualified to hold his position as a factory service attendant employee.

111.     Plaintiff Carolyn Y. Wheaton ("Plaintiff Wheaton") is a resident of the State of Kansas who was born June 15, 1962, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Wheaton was employed by Boeing for eighteen (18) years. Plaintiff Wheaton was qualified to hold her position a factory attendant.  Thus, Plaintiff Wheaton filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

112.     Plaintiff Sylvester Williams II ("Plaintiff Williams II") is a resident of the State of Kansas who was born on February 7, 1954, and who, as of May 19, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Williams II was employed by Boeing for more than twenty (20) years. Plaintiff Williams II was qualified to hold his position as a skin quality employee. Thus, Plaintiff Williams II filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

113.     Plaintiff Janet M. Wilson ("Plaintiff Wilson") is a resident the State of Kansas who was born on January 6, 1960, and who, as May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Wilson was employed by Boeing for eighteen (18) years.

THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiff Wilson was qualified to hold his position as an assembler. Thus, Plaintiff Wilson filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

114.    Plaintiff Walter Woods ("Plaintiff Woods") is a resident of the State of Kansas who was born on March 27, 1947, and who, as of May 20, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Woods was employed by Boeing for sixteen (16) years. Plaintiff Woods was qualified to hold his positions as a structure mechanic. Thus, Plaintiff Woods filed a timely EEOC complaint, received a notice of the right to sue and has exhausted all administrative remedies.

115.    Plaintiff Betty R. Young ("Plaintiff Young") is a resident of the State of Kansas who was born on July 11, 1957, and who, as of May 27, 2005, was employed by Boeing at its Wichita, Kansas facility. Plaintiff Young was employed by Boeing for twenty-five (25) years. Plaintiff Young was qualified to hold her position.

116.    Each plaintiff was laid-off/terminated/not hired in furtherance of the defendant's common scheme known as "Project Lloyd."

### C. Defendants

#### 1. Boeing

117.    Boeing's Wichita Division supported the commercial, military, and space products and services of the Boeing Corporation. Operations in Wichita date back to the old Stearman Aircraft Company, which became part of Boeing in 1934 when the federal government required United Airlines, Pratt and Whitney, and Boeing to split into three separate companies. It is the largest employer in the State of Kansas. The division produces 75 percent of the parts for Boeing's 737 commercial airliners as well nacelles, nose sections and other parts for Boeing's 747, 757, 767, and 777 as well as a range of maintenance services and parts for the company's military and commercial products. Boeing can be served as set forth in the summons

#### 2. Onex/Spirit/Midwestern (referred to as Onex and/or Spirit)

THIRD AMENDED CLASS ACTION COMPLAINT

118.     Onex is a Canadian corporation that is the parent company of Spirit Aerospace. Midwestern Aircraft Systems is the former name of Spirit Aerospace.  Onex employees, Nigel Wright, Seth Mersky, and David Mansell negotiated the terms of the sale of the Boeing plants and, along with Boeing, made the decisions against the plaintiffs. Nigel Wright, Seth Mersky, and David Mansell were working on behalf of the NewCo which is now known as Spirit Aerosystems, Inc.  Midwestern Aircraft Systems was formed solely to be the entity to run the Wichita plant and was not publicized until after the sale of the Boeing plant.  Onex boasts on its website that Nigel Wright (managing director of Onex) and Seth Mersky (managing director of Onex) "co-led Onex' acquisition of Boeing's commercial airplane manufacturing operations in Wichita, Kansas, and Tulsa and McAlester, Oklahoma, operating as Spirit AeroSystems, Inc."[1]

119.     Each company has been properly served.

## IV. CLASS ALLEGATIONS

120.     Plaintiffs sue on their own behalf and on behalf of a Class of persons pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) for their non-ADEA claims.

121.     The named plaintiffs bring their ERISA Class Action Complaint on behalf of the following classes:

        a.          a Class of all individuals who were employed Boeing's facilities in Wichita, Kansas; Tulsa, Oklahoma; and McAlester, Oklahoma who were terminated or laid off by Boeing between January 1, 2002 and December 31, 2004 and were age 40 or older at the time of termination or lay off ("Pre-Divestiture Class").

        b.          a Class of all individuals who were employed Boeing's facilities in Wichita, Kansas; Tulsa, Oklahoma; and McAlester, Oklahoma who Boeing between the time period of January 1, 2005 and July 1, 2005; were

---

[1] http://www.onex.com/index.taf?pid=40&_UserReference=50E019F7A8D553C143A6EB88.

THIRD AMENDED CLASS ACTION COMPLAINT

age 40 or older at the time of termination or lay off; and who were not

hired by Spirit on June 17, 2005. ("Divestiture Class")

122.   The named plaintiffs bring their LMRA Class Action Complaint on behalf of the

following class:

   a.   a Class of all individuals who were employed Boeing's facilities in

      Wichita, Kansas; Tulsa, Oklahoma; and McAlester, Oklahoma who

      Boeing between the time period of January 1, 2005 and July 1, 2005; were

      age 40 or older at the time of termination or lay off; and who were not

      hired by Spirit on June 17, 2005.

123.   Plaintiffs reserve the right to modify these Class definitions and Class period

based on the results of his class certification discovery.

**A.   23 (a) Requirements**

124.   There are at least one thousand Class members.   Each Class is so large that

joinder of all members is impracticable.

125.   Questions of law and facts common to the class include:

   a.   Whether defendants intended to interfere with the plaintiffs' ERISA protected

      benefits;

   b.   whether the defendants intentionally interfered with the protected ERISA

      rights of plaintiffs;

   c.   whether defendants have violated the Labor Management Relations Act

      ("LMRA");

   d.   whether defendants conspired with the IAM National Pension Fund to reduce

      the age of the Wichita Division workforce by 2010; and

   e.   whether further injunctive relief is appropriate as a remedy for the past,

      present, and future discrimination.

126.   Plaintiffs' claims are typical of the claims of the Class.

THIRD AMENDED CLASS ACTION COMPLAINT

127.    Plaintiffs and Class counsel will fairly and adequately protect the interests of the Class.

**B.    23(b) Requirements**

128.    **Fed. R. Civ. P. 23(b)(2)**: The defendants have acted/refused to act and are acting/refusing to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief to the Class as a whole.

129.    **Fed. R. Civ. P. 23(b)(3)**: Common questions of fact and law predominate over questions affecting only individual members.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

131.    There are no unusual difficulties likely to be encountered in the management of this litigation as a class action.

132.    Notice to the Class may be accomplished inexpensively, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written notices supplied through defendant's system of communication.  Additionally, notice can be posted on plaintiffs' counsels' website, www.williamsonfirm.com.

133.    With respect to their claims for age discrimination in violation of the ADEA, all named plaintiffs seek certification of Count I pursuant to 29 U.S.C. 216(b) of the following presently ascertainable subclass: **all former employees of Boeing's facilities in Wichita, Kansas; Tulsa, Oklahoma; and McAlester, Oklahoma who were terminated or laid off by Boeing between the time period of January 1, 2005 and July 1, 2005; were age 40 or older at the time of termination or lay off; and who were not hired by Spirit on June 17, 2005.** (collectively, "the ADEA Class").

134.    Plaintiffs' claims under the ADEA warrant the creation of the ADEA Class because the named plaintiffs who were age forty and over at the time of the termination of their employment are similarly situated to the class of persons they seek to represent in this collective

THIRD AMENDED CLASS ACTION COMPLAINT

action.  All were terminated as a result of a single discriminatory program designed and implemented at the highest levels of Boeing and Onex's management, and all are seeking the same relief.

## V. FACTUAL ALLEGATIONS

### A.  Pattern and Practice of Discrimination

135.      The defendants together, and in conspiracy and concert, specifically targeted individuals who were over the age of forty in its adverse business decisions.  There is no legal justification for these decisions.

136.      The decisions made against plaintiffs and Class were part of a common plan and scheme.   Upon information and belief, the defendant's common scheme began as early as January 2002, when Defendant Boeing began negotiating a sale of its Wichita plants and where Defendant Boeing made several "low key" layoffs.  The climax of the scheme took place in two waves in 2005.  One wave of lay offs occurred in May 2005.  The second wave of layoffs occurred in June 2005.  All layoffs were part of "Project Lloyd."

137.      Boeing began, as early as 2001, identifying that growing pension expenses were a concern to the company and began undertaking several initiatives to reduce pension expenses.

### 1.  Boeing created and peddled the Plan to get rid of older workers

138.      Boeing conducted a series of initiatives to reduce labor and other costs and reduced staffing at Wichita by over 3000 between 2001 and 2002, and a launched a further wave of cost cutting initiatives in 2003. The initiatives included terminations.

139.      Boeing, before the decision to offer the Wichita Division was made, developed cost reduction opportunities that it would peddle to a potential buyer.  For instance, in March 2004, Boeing identified "potential for meaningful cost savings" as benefit to divesting the Wichita Division.   The cost savings included labor savings.  Labor savings included a reduction in staffing.

THIRD AMENDED CLASS ACTION COMPLAINT

140.     The reduction in staffing was modeled on a new company selectively rehiring a maximum of 90% of employees.  In March 2004, Boeing acknowledged that the assumptions used in the cost savings projections assumed that the "purchaser would not take a sizable % of the folks".  Labor costs associated in this reduction included pension expenses.  All of these projections were developed by Boeing, prior to Onex/Spirit becoming aware of the sale of the Wichita Division: April 2004.

141.     Prior to beginning the selective rehire process, Boeing also identified the potential costs reductions regarding labor and using a selective rehire process.

142.     Additionally, Boeing correlated the likelihood of successful negotiations based on the amount of money that a new company could potentially save in slashing the workforce numbers.

143.     Boeing developed and designed a marketing document that was sent to prospective buyers.  This document was known as the Offering Memoranda ("OM").  In this OM, Boeing admitted that its rise in fringe benefit costs was partly attributed to pension contributions.  Pension contributions are dependant upon the funding levels of the pensions.  Thus, if a potential purchaser wished to realize the cost savings that Boeing identified, it would have to initiate a selective rehire process.  In September 2004, Boeing identified the question as to how the OM savings would be reached as a significant question in regards to its negotiation strategy.  It was noted that Boeing wished to sell the Division to a "financial sponsor."

144.     In December 2003, Boeing also valued the amount of savings that would be realized with a headcount reduction.  Additionally, Boeing correlated the headcount reduction savings to wages and fringe costs.  Boeing also stated that the pension liabilities that would be sent to the new company were a major concern to the companies.  Pension costs are also intertwined with fringe costs. In December 2004, prior to the beginning of the selective rehire process, Boeing asked for an estimate on the financial gain that it would receive from the newco hiring less than 100% of the workforce, i.e., 85% of the workforce.  Boeing later decided to

THIRD AMENDED CLASS ACTION COMPLAINT

utilize an 85/15 model where the goal was to hire up to 85% of workers, laying off a greater percentage than the originally anticipated (90%).

145.    The age of workers was at the forefront of studies and discussions before the selective rehire process began and while the selective rehire process was conducted.  Boeing, in March 2005, during the selective rehire planning and process, was also tracking employees that were at retirement age and tracking the number of workers that were 55-59 and 60+.

146.    Furthermore, even though workers were being laid off (or not recommended), Boeing admitted that the business plan it developed and presented to potential buyers would be one reduction in force and after "becoming Newco and that it would "ramp up [the employee numbers]".  Additionally, in March 2005, while the selective rehire process was in progress, Boeing identified the number of external rehires that needed to be hired.  Not only did Boeing plan to "ramp up" the number of workers, Boeing hired in workers leading to the divestiture and Spirit continued to hire workers immediately after the divestiture.

147.    Boeing admitted that wages were tied to age brackets. Boeing also admitted that certain employees' salary was high because, in part, because such workers are "older". Boeing also identified the age of the workforce as a topic of discussion in February 2004.  Similarly, Boeing's desire to cut pension costs was a proxy for age.

148.    Boeing correlated age with health care costs and expected that the average age of the workforce will decrease with attendant decrease in health care costs.  However, it is difficult to predict the resulting fringe rates, since wages for newly hired employees may also be lower than those of the retiring population.

149.    Boeing has also admitted in documents that the pension plans relevant to Lloyd were underfunded.  A discussion of the economics of the funding status shows that the funding status of pensions was part of the consideration of the sale of the Boeing Division.  Moreover, Boeing's actuary followed the age of the workforce as segregated by various factors in including salaries.

THIRD AMENDED CLASS ACTION COMPLAINT

150.     Additionally, the liability of future pension benefits was dependant on the population that actually goes to the buyer.  Boeing also identified, prior to the selective rehire process beginning, on September 24, 2004, that if Boeing sent the pensions to the new company it would avoid future pension liabilities hundreds of millions of dollars.

151.     This would be addressed by a purchase price adjustment in the transaction.  Even before the selective rehire process began, Boeing discussed the underfunding status of its pension plans.

152.     As such, the defendants had the intent to limit the number of people that would be transferred to the company.  In doing so, the parties intended to stop plaintiffs and class from accruing additional future ERISA protected benefits.  Besides reducing the age of the workforce, this is the reason that the parties developed the 85/15 model.

153.     All defendants received benefits from not hiring plaintiffs and class while Spirit hired newer workers off of the street.  Boeing also realized an accounting curtailment as a result of laying off workers.

154.     In other words, by selling the business, Boeing would avoid future costs as related to pension contributions. Indeed, Boeing modeled a future cost avoidance in regards to pensions and retiree medical.  This was to be accomplished by preventing the plaintiffs from growing into their future benefits.

155.     The pension contributions are correlated with the funding status of pensions.

156.     While the defendants continue to reap the benefits of displacing plaintiffs, the plaintiffs are no longer accruing pension benefits and their benefits are frozen.  Benefits that continued to accrue would yield more value to plaintiffs.  Essentially, defendants strong armed plaintiffs and all workers, and had to develop this divestiture because there would be no way around the protections in the collective bargaining agreements.

### 2.     Spirit participated in and perfected the Plan

THIRD AMENDED CLASS ACTION COMPLAINT

157.     Both Boeing and Spirit engaged in a pattern and practice of age discrimination in connection with the RIF by treating younger employees more favorably than older employees in implementing the RIF.  Employees were told that Boeing's managers would have "great input" on the decisions that were made against them.  Employees were also told that there would be an objective system in place to evaluate and retain the most qualified individuals.  However, this never happened as the defendants have discarded the most qualified employees because of their age.

158.     The defendants have already begun in the "I blame you and you blame me" game.  For instance, Onex claims that it did not keep documents that support the reasons that decisions were made against the employees despite a clear federal mandate to retain this information.  As a result of their actions, Onex received a records keeping violation from the EEOC.  On the other hand, Boeing claims that it did not play any part in making the decisions against the employees.  If this is true, the defendants will not be able to rebut the statistical analysis presented by the plaintiffs or the prima facie evidence established by the plaintiffs.

159.     The cost reductions related to labor were an integral part of the transaction between defendants.  Specifically, the reduction of pension expenses and reduction of labor costs were an integral part of the transaction and not just incidental to the transaction.  Indeed, Boeing identified significant labor savings as a primary premise in the offering the Wichita Division for sale.

160.     Spirit has also enjoyed in the spoils.  Onex also stated that it realized an immediate and significant cost savings.  The majority of all cost down opportunities was related to labor.  Onex projected that it would continue to realize cost savings into the future as a result of the selective rehire process.

161.     In October 2004, Onex presented an investment memorandum to its Board of Directors regarding a potential purchase of the Wichita Division.  As plaintiffs previously argued, Onex agreed that Boeing could not reduce costs associated with labor and pensions

THIRD AMENDED CLASS ACTION COMPLAINT

without divesting the Wichita Division without re-negotiations of current collective bargaining agreements because of the seniority requirements in the collective bargaining agreement.  In this investment memo, Onex believed that the Wichita Division was attractive because, in part, of the ability to reduce costs.

162.     This same investment memo recognized that the "workforce is unionized and significantly more expensive, in terms of both wages and fringe benefits, than comparable local aerospace labor. . ."  Onex also noted that Boeing's management estimated that 90% of workers would be retained.  Boeing's management, according to Onex, also estimated that productivity changes would be between 200 million and 320 million annually.  Onex would only agree to assume pension liabilities if Boeing agreed to adjust the purchase price equal to the unfunded (same as underfunded) pension liability.  "In modeling the Wichita Division, [Onex] assumed that labor savings will be achieved as suggested by BCA."  Onex knew that Boeing preferred to work with a "strategic supply partner" as opposed to a total separation.

163.     The Division's ability to supply Boeing at lower prices depended on the new company's ability to achieve the cost downs set by Boeing.  Indeed, Spirit acting through Dave Mansell, Nigel Wright, and Seth Mersky and others at their direction labeled the cost downs as "foundational assumptions".  The companies would work "in cooperation" in order to meet the cost reductions.  If Spirit was unable to meet the cost reduction targets, it would have requested further price reductions. Spirit also noted and tracked the average age of the workers in the largest unions.

### 3.     IAMNPF and Mercer participated in the Plan as well

164.     Boeing, Mercer, and Spirit engaged in a conspiracy to reduce the age of the workforce in exchange for financial consideration.

165.     In approximately February 2005, Spirit contacted the IAMNPF ("IAM National Pension Fund") in order to place the newly acquired pensions with the IAMNPF.   Spirit attempted to do so at a certain cost rate.

THIRD AMENDED CLASS ACTION COMPLAINT

166.     In response, the IAMNPF stated that in order to achieve Spirit's desired rate, Spirit would have to reduce the average age of the workforce.  Mercer acknowledged that the IAMNPF was attempting to identify the demographic criteria that would equal a significant cost reduction for Spirit.

167.     Spirit acknowledged that it understood the decrease in age.  As such, Spirit agreed to reduce the age of the workforce in order to meet its financial goal.  Mercer advised Spirit as to what steps it would have to take in order to meet the reduced age of the workforce. Mercer advised that Spirit would have to reduce the entering age of the workforce from the Wichita Division's average age to the age of 30.  Indeed, Sprit was required to replace or add 2000 new employees by June 2008. This began with the terminations of plaintiffs and class followed by a "ramp up" of new hires.  Indeed, Spirit hired over 1,000 in the first year after the sale and is on its way to meeting its newly defined demographic pool despite the existence of the instant action.

168.     Mercer also advised Spirit that Spirit would have to remove more people from the 45-54 age range in order to reach the financial goals it sought.

**B.  Disparate Treatment**

    **1.  Similarly Situated Younger Individuals Treated More Favorably**

169.     In some divisions, all of the senior grade employees were terminated while similarly situated younger workers were not.  For instance, in Department 3271, the top senior employees of their grade level were terminated.

170.     Boeing and Onex were targeting individuals over the age of forty.   In one department, each of the individual's who were laid off were in the age 51 to 52 bracket and were the top five senior people of that grade level in the shop.

171.     Onex through Spirit continues its pattern of releasing older seniority employees while retaining and hiring younger workers at a lower pay rate.  The jobs of these individuals

THIRD AMENDED CLASS ACTION COMPLAINT

were not eliminated and some plaintiffs have even applied for the exact same position that they were terminated from.

**2.  Further Direct Evidence of Intentional Discrimination**

172.      Many managers have specifically told employees that they were simply too old to work at Boeing.  At meetings, managers would show a pyramid shop.  This pyramid chart would show the ages of workers in the division, with the oldest person at the top. Other mangers would simply tell employees that they should retire because the employee was too old.  Additionally, the defendant made its decisions regarding salaries and benefits because the defendant did not want to pay the older workers their salaries and benefits and any decisions made in regards to salaries and benefits were directly correlated to the age of the workers.  Consider for example the following statements made by managers:

> (1)     Plaintiff Houston was told "If I were you and your age I would retire."
>
> (2)     Plaintiff Schloetzer was asked, "What will you do Albert if you don't get a job offer, you're getting old and you're handicapped?" In fact, a week before Plaintiff Schloetzer was laid off, management stated, "That's what happens when you get old … you can't move as fast!"
>
> (3)     Plaintiff Kerns was asked: "are you getting to old to do your job?" and told "Maybe, we should put you on another shift if you're too old!  Getting to old to get it done on time?"
>
> (4)     Plaintiff Housley was told that "these younger folks are much better on the computer than the older folks".  She was also asked how old she was.    When she informed him of her age, the manager stated she should just consider retirement and not worry about anything because "we do not know what the future holds."

THIRD AMENDED CLASS ACTION COMPLAINT

(5)    Plaintiff Bonesteel, heard the managers mention the "Aging Workforce" comment several times. Plaintiff Bonesteel, knew that the age of the workers was a concern of Boeing.

(6)    Plaintiff Montgomery was also consistently questioned as to when she was going to retire.

(7)    Plaintiff Williams II was referred to as the "old guy" by his managers.  When Plaintiffs Williams II received his twenty year award, his managers to him that it was time for him to retire. Additionally, Plaintiff Williams II was always harassed about his age and was called the old guy in a crew meeting and even told "man your getting gray."

(8)    Plaintiff Bronnenberg recalls meetings where managers would consistently comment on the age of the work force.

(9)    Plaintiff Callaway's manager continuously pushed him to retire.

(10)    Plaintiff Apsley heard management say, "if you are fifty-five or older than you should go on and retire."

(11)    Managers told Plaintiff James that "Boeing is changing.  Young people will come and the older people will go!"

(12)    Plaintiff Bakk heard comments made by management regarding the age of individuals which lead him to believe he was laid off because of his age.

(13)    Plaintiff Childers was strongly encouraged to retire by management.

(14)    Plaintiff Cox was told by management "If you are too old to keep up the pace … get out!  If you are retirement age … get out! This is for the younger people to do the work now."

THIRD AMENDED CLASS ACTION COMPLAINT

(15)  A week before Plaintiff P. Cox was laid off, management asked her how old she was.

(16)  Management informed Plaintiff DeZarn, on several occasions, that her age and handicap would hinder her future employment.

(17)  Plaintiff Jones often heard management repeatedly state in meetings that the average age of the workforce was forty-eight (48) to forty-nine (49).

(18)  Plaintiff McCurdy was told that manangment commented that the Tulsa workforce was getting too old and that the company realized that it could lay off older workers and hire younger workers at cheaper pay.

(19)  Plaintiff Powell heard management say, "Boeing needs to be competitive with an aging older workforce.  Younger people are stronger and faster."

(20)  Plaintiff Schwind was told by management that Boeing was an "aging workforce."

(21)  Plaintiff Schroeder was specifically told by management that he should take early retirement because he would be too old to receive a call back.

(22)  Plaintiff Smith that if she was close to retirement than it would be best for her to retire.

173.     Spirit continues its pattern of releasing older seniority employees while retaining and hiring younger workers at a lower pay rate.  The jobs of these individuals were not eliminated and some plaintiffs have even applied for the exact same position that they were terminated from.

**C. Disparate Impact**

-44-

### 1. Alleged Criteria

174.     Boeing and Spirit have not informed any of the plaintiffs or class members as to why they were not chosen.  Boeing or Spirit have not informed any plaintiffs or class members what criteria were actually utilized.  To the best of plaintiffs' knowledge there was a document generated by either Onex and Boeing titled "RE-Hire Recommendation Criteria."  The criteria contained in this document allowed for excessive subjectivity in the decisions made.  More importantly, the criteria violated the collective bargaining agreement.  However the criteria were in reality questions that had no real method to measure and instead allowed managers to exercise prejudices and biases in the employment decisions.

### 2. Alleged Criteria Was Not Utilized

175.     Employees never received a notice as to how they did not meet the criteria offered and in most cases, the employees met every criteria except for being younger than forty.

176.     In a cursory review of the history of the employees leaves no doubt that any alleged criteria were never used.  Many of the employees, if not the majority, received no discipline and received great performance reviews.  Additionally, many, if not all, employees were qualified to complete their jobs and even received numerous awards and accolades for their great work.

177.     In fact, managers were specifically instructed not to keep any records of the decisions that they made against workers.  Managers in closed meetings, were also told that the workers at Boeing were too old and to keep that fact in mind as decisions were made.

### 3. Even If Criteria Was Used, It Allowed for Too much Subjectivity

178.     The alleged criteria placed excessive subjectivity in the hands of managers who hold inherent biases against employees.  For instance, one of the alleged criterions was "favorable attitude toward the company."  This "criterion" is inherently biased against individuals who have reported misconduct on behalf of Boeing and have reported that their

THIRD AMENDED CLASS ACTION COMPLAINT

managers and Boeing had discriminated against employees because of the employee's age, race, or disability.

179.     Along the same lines, the alleged criteria state "does the employee take an active role in developing and solutions to problems that pose a risk for injury?"  This subjective question seems to specifically target individuals who have exercised worker's compensation right's in the past and who held work restrictions in the future.  By its very nature this criterion also places target signs on employees who are over the age of forty.

180.     There were no objective measures in place that would curtail the use of this excessive subjectivity.  The excessive subjectivity allowed managers to exercise their age biases in recommending individuals for employment.  This procedure has had a clear impact upon older workers.

**D. Statistics Provide Evidence for Pattern and Practice, Disparate Treatment, and Disparate Impact**

181.     A review of statistics will raise the irrefutable presumption that the defendant has intentionally discriminated against older workers.  Additionally, the statistics will raise the irrefutable presumption that the alleged criteria utilized by the defendants had a disparate impact against older workers.

182.      The statistics of the samples available yield a statistical significance greater than 0.05, that necessary to legally establish discrimination.

183.     Additionally, Boeing's internal statistics also show that workers over the age of forty were terminated at a statistically higher rate than workers under forty.  The standard deviations found by defendants is 5.56 or 7.24 depending on which analysis is accurate.  Defendant did not adjust any hiring decisions based on the results of the adverse impact analysis.

184.      This glaring disparity is unexplainable: especially in light of the fact that the bargaining agreement called for lay-offs to take place by seniority.

THIRD AMENDED CLASS ACTION COMPLAINT

**E.  IAM Breached its Duty of Fair Representation**

185.     Boeing terminated employees prior to their pension vesting, sometimes just months or days away.  Additionally, the workers who did not receive an offer from Onex were not allowed to vote on critical issues.  Moreover, the IAM did not file grievances against the defendants and allowed the defendants to violate the Collective Bargaining Agreement

186.     Boeing/Onex illegally took the above measures and others to classify its employees on the basis of age, and to otherwise adversely affect the employment of older is employees and other similarly situated employees.   The Union turned its back on its members and simply failed to protect them.

**F.  Defendants Purposely Interfered With the ERISA Rights of the Employees**

187.     The defendants undertook several studies regarding the costs of the health care plans and pension plans upon Boeing and Onex and actually valued the costs of these ERISA protected benefits.  The companies targeted those with the most seniority and those who would be close to receiving greater pension benefits.  This decision was tied to the demographics (age) of the workers in the plant.  The defendants determined how much money they would save if individuals did not reach certain age landmarks that triggered additional benefits and then laid the employees off.  The savings from this intentional interference was known and negotiated by Onex and was part of the consideration for the sale.  Thus, the defendants laid workers off before they reached these various landmarks and laid workers off before the workers would be entitled to greater pension benefits which simply was done to interfere with the plaintiffs' pension benefits in an effort to make the sale look more attractive.  These landmarks were tied to the age of workers and the vesting of certain rights is protected under ERISA.  Both Spirit and Boeing made these decisions based on how much money it would save by interfering with rights protected under ERISA and avoiding its pension liability.

188.     The defendants also priced the costs of health care for individuals who reached certain age thresholds, mainly for those reaching the age of forty and older.   Of the few

THIRD AMENDED CLASS ACTION COMPLAINT

individuals who were under the age of forty at the time that they were laid off, many were within months of their fortieth birthday.  The defendants learned that the health care benefits for workers would dramatically increase once an individual reached the age of forty.  Other age markers were also used by the defendants when studying the cost of health care, such as age markers 50, 55, and 60.  Health care benefits are protected under ERISA.  Thus, the defendants were motivated by a desire to avoid liability for ERISA protected benefits.  Moreover, the defendants' desire to avoid liability for ERISA protected benefits is prohibited employer conduct.  The actions were taken for the purpose of interfering with the attainment of the plaintiffs' ERISA protected rights.

189.     The specific amounts of benefits lost can only be known through discovery.

## COUNT I: Age Discrimination
### (Pattern and Practice, Disparate Treatment and Disparate Impact)

190.     Plaintiffs hereby incorporate the previous paragraphs as if fully set forth herein.

191.     Defendants have engaged in a pattern and practice of discrimination against plaintiffs on the basis of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623.

192.     Each plaintiff and ADEA Class member is within the protected age group and their work was beyond satisfactory.  Additionally, the plaintiffs and Class were discharged despite the adequacy of their work and not hired despite being the most qualified for the positions.  As incorporated in this section, there is evidence the defendants intended to discriminate against the plaintiffs and Class in reaching its decisions.

193.     Additionally, the defendant has implemented standards and utilized considerations that have had a disparate impact against protected older workers.

194.     As a result of defendants' conduct, plaintiffs and members of the Class have suffered and continue to suffer loss and damage.

## Count II: Interference with ERISA Rights
### (In Violation of Section 510 (29 U.S.C. § 1140))

-48-

195.     Plaintiffs and Class hereby incorporate the previous paragraphs as if fully set forth herein.

196.     Defendants are prohibited from discharging or otherwise discriminating against a plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

197.     Here the defendants have specifically intended to interfere with the plaintiffs ERISA rights.  Boeing and Onex designed and implemented its sale with the intention of interfering with the attainment and receipt of benefits under the Plans.

198.     As a result of defendants' conduct, plaintiffs and members of the Class have suffered and continue to suffer loss and damage.

### Count III: Breach of Contract
### (Violation of LMRA)

199.     Plaintiffs and Class hereby incorporate the previous paragraphs as if fully set forth herein.

200.     Defendants entered into contracts, and made oral and written representations to plaintiffs and members of the Class, regarding the terms and conditions of their employment, including but not limited to assurances that older workers would and will have the same employment opportunities as others.  Such language was memorialized in each Collective Bargaining Agreement that the Boeing entered into

201.     Defendants' representations constitute binding contractual commitments with plaintiffs and members of the Class, and defendants have contractual obligations with others as to these matters, which were designed to protect plaintiffs and the Class from the alleged conduct at issue.

202.     The defendants have violated various provisions of The Collective Bargaining Agreements in existence (2002-2005).  For instance, the Collective Bargaining Agreement required for layoffs to occur based on an individual's seniority.  However, Boeing failed to

-49-

THIRD AMENDED CLASS ACTION COMPLAINT

abide by these contractual terms in recommending the layoffs of the plaintiffs and class, thus violating the collective bargaining agreement. Spirit participated in this avoidance of the seniority requirements and both Boeing and Spirit implemented the selective rehire in a divestiture in order to avoid the seniority requirements in the collective bargaining agreements. Plaintiffs have standing to bring a breach of contract action.

203.    Furthermore, the IAM, failed to properly file grievances for the egregious acts of Boeing and Onex. Moreover, IAM breached its duty of fair representation. The union's breach of this duty actually affected the integrity of the entire union process. The IAM has simply ignored the meritorious claims of the plaintiffs and Class. The plaintiffs were not required to follow any contractual procedures for settling disputes. Furthermore, the plaintiffs were unable to follow any grievance procedure as they were forbidden from casting votes and otherwise participating in union activities.

204.    Defendants' contractual breaches have directly and proximately caused plaintiffs and the Class to suffer damages including, but not limited to, lost past and future earnings, lost benefits and consequential damages, in amounts to be proven at trial.

## VI.   PRAYER FOR RELIEF[2]

WHEREFORE, plaintiffs pray for relief as follows:

---

[2] Plaintiffs retaliation claims based on protected activity that must have been administratively exhausted have been dismissed. This cause of action is left in this Amended Complaint in order to avoid any waiver issues on appeal. This cause of action is not pursued on behalf of a class.

**COUNT VIII: Retaliation**
**(Exercising Rights under Protected Activities)**

1.    Plaintiffs hereby incorporate the previous paragraphs as if fully set forth herein.

2.    Many of the class members are females who have complained of discrimination, minorities who have complained of discrimination, individuals who have filed worker's compensation, exercised FMLA, exercised disability rights, or have blown the whistle on managers, all of which are protected activities. Besides being over the age of forty, upon information and belief, defendants' alleged criteria targeted individuals who have exercised such protected rights. Thus, the defendants have taken an adverse decision against these individuals.

3.    Additionally, the defendant's actions had an adverse impact on members of a protected class.

4.    As a result of defendants' conduct, plaintiffs and members of the Class have suffered and continue to suffer loss and damage.

-50-

THIRD AMENDED CLASS ACTION COMPLAINT

A. That this case be certified as a class action pursuant to Fed. R. Civ. P. 23 and/or a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the proposed plaintiff class and subclasses, and that plaintiffs' counsel of record be designated as Class Counsel for the class and subclass;

B. That a declaratory judgment be issued declaring that the Release is invalid and unenforceable under the ADEA, ERISA and the common law, pursuant to 29 U.S.C. § 626(f)(1), 29 U.S.C. § 1132(a)(3) and 28 U.S.C. § 2201 and 2202;

C. That court provide the maximum equitable remedies allowable including a permanent injunction be issued compelling Spirit to offer all plaintiffs and the class and subclass members the opportunity to be reinstated as employees under the same terms and conditions which existed prior to the termination of their employment status and restoration to participant status under the Plans, or in the alternative, equitable restitution to plaintiffs and the class and subclass pursuant to 29 U.S.C. § 1132(a)(3), 502(a)(3), and 29 U.S.C. § 626(b) respectfully;

D. That judgment be entered in favor of plaintiffs and the class and subclass members and against the defendants restoring to them all benefits and other forms of compensation lost between the dates of the termination of their employment and the date of judgment, together with interest or an appropriate inflation factor, pursuant to 29 U.S.C. § 1132(a)(3);

E. That judgment, individually, be entered in favor of plaintiffs and the class and subclass members and against the defendants for lost benefits, future benefits, back pay (including interest or an appropriate inflation factor), front pay, lost investment capital, and liquidated damages, pursuant to 29 U.S.C. § 626(b);

F. That judgment be entered in favor of plaintiffs and class and subclass members and against the defendants for all direct, incidental, and consequential damages arising out of the defendants' breaches of contract;

THIRD AMENDED CLASS ACTION COMPLAINT

G. That judgment be entered in favor of plaintiffs on their class claims and against the defendants for punitive damages in amounts to be determined at trial no less than one billion five hundred million dollars ($1,500,000,000) to be divided equally among the class members;

H.  That judgment be entered on plaintiffs', individual, non class claims, for all direct, incidental, and consequential damages, including non-financial injuries, arising out of defendants' actions;

I. That a constructive trust be imposed over defendants' assets sufficient to cover all losses suffered by the class members as a result of the violations of ERISA;

J. That plaintiffs and class and subclass members be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable;

K. That plaintiffs and class and subclass members be granted their attorneys' fees, experts' fees, and the costs and expenses of this litigation;

L. That a declaratory judgment be issued declaring that the defendants have violated Title VII by failing to retain proper documentation; and

M. That the Court retain jurisdiction over all defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law.


DATED:  June 12, 2008


Respectfully submitted,

-52-

THIRD AMENDED CLASS ACTION COMPLAINT

s/Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr. #21282
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:  (913) 535-0736
E: l.williamson@williamsonfirm.com
*Attorneys for plaintiffs and Class*

## DEMAND FOR A JURY TRIAL

COMES NOW plaintiffs, by and through their counsel, and respectfully request that this matter be set for a jury trial.  Wichita, Kansas is designated as place of trial.

By: s/Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr.  #21282
*Attorney for plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

**James Armstrong**
**Carolyn Matthews**
**Trish Thelen**
**Todd Tedesco**
*Foulston and Siefken*

*Attorneys for Defendants*

THIRD AMENDED CLASS ACTION COMPLAINT